Case: 1:21-cv-01376 Document #: 1 Filed: 03/12/21 Page 1 of 16 PageID #:1

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHAQUAVIA HARRIS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>RUST-OLEUM CORPORATION,<br><br>Serve at:    11 Hawthorn Parkway<br>                   Vernon Hills, IL 60061<br><br>        Defendant. | Case No.    1:21-cv-1376<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

**CLASS ACTION COMPLAINT**

Plaintiff brings the following Complaint against Rust-Oleum Corporation related to the company's marketing and sale of its RainBrella product. In support of her Complaint, Plaintiff respectfully submits the following:

**Nature of the Case**

1.    Plaintiff brings this proposed class action on behalf of herself and all other consumers who purchased RainBrella.

2.    RainBrella is a glass treatment product designed to repel rain, mud, and dirt from automotive glass.

3.    On the front of the packaging, Rust-Oleum represents that RainBrella "Lasts Over 100 Car Washes."

4.    In a different location on the package's front, Rust-Oleum also represents that RainBrella "Lasts 2X Longer*." The asterisk associated with this representation explains—on the

1

opposite side of the box—that "RainBrella and its repellent properties last, on average, at least two times longer versus the leading competitor in a wiper blade abrasion test."

## Parties

5. Plaintiff Shaquavia Harris is a citizen and resident of Wisconsin.

6. Rust-Oleum is an Illinois corporation with its principal place of business in Vernon Hills, Illinois. Rust-Oleum Corporation is owned by RPM International, Inc.

## Jurisdiction and Venue

7. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed classes, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, and this is a class action in which Rust-Oleum and class members are citizens of different states.

8. This Court may exercise jurisdiction over Rust-Oleum because the company is an Illinois corporation with its principal place of business in this District. Furthermore, the company is registered to conduct business in Illinois, and intentionally avails itself of the markets within Illinois through the promotion, sale, marketing, and distribution of RainBrella, thus rendering the exercise of jurisdiction by this Court proper and necessary.

## Factual Allegations

### *Rust-Oleum's Marketing of RainBrella*

9. Rust-Oleum sold RainBrella as a glass treatment for the purpose of repelling rain, mud and dirt instantly.

10. RainBrella was sold in a box containing two supersaturated cloth wipes each inside a sealed pouch.

11. Rust-Oleum marketed and sold RainBrella with packaging statements such as: "Lasts 2X Longer" and "Lasts over 100 carwashes."

12. The representations were prominently displayed on RainBrella's packaging with font size and designs that were intended to draw attention to them; the packaging is depicted below:



3



13. As shown above, the representations depicted on the back of RainBrella's packaging state: "RainBrella and its repellant properties test, on average, at least two times longer versus the leading competitor in a wiper blade abrasion test."

14. Rust-Oleum sold RainBrella on its website, Amazon, and at general merchandise retailers such as Menards, Home Depot, Fleet Farm, and Wal-Mart.

15. As set forth herein, Rust-Oleum's statements that its RainBrella product "Lasts 2X Longer" and "Lasts over 100 car washes" are false and misleading.

### *The Texas Lawsuit*

16. Illinois Tool Works (ITW) manufactures a popular water repellent product called Rain-X.

17. In July 2017, ITW filed a Lanham Act case against Rust-Oleum alleging that Rust-Oleum's RainBrella representations were false and misleading. That case was known as *Illinois Tool Works, Inc. v. Rust-Oleum Corporation*, Case No. 17-CV-2084 (S.D. Tex.) ("the Texas lawsuit").[1]

18. ITW alleged that Rust-Oleum's claims that RainBrella "Lasts 2X Longer" was "literally false" because

> ITW conducted wiper blade abrasion tests comparing its Rain-X windshield and exterior glass water repellent to [] RainBrella windshield water repellent. ITW's wiper blade abrasion tests revealed that Rain-X outlasted RainBrella, not the other way around.

*See* ITW First Amended Complaint [Doc. # 35] in the Texas lawsuit at ¶ 20.

19. ITW also alleged that Rust-Oleum's representation that RainBrella "Lasts Over 100 Car Washes" was false and misleading. *Id.* at ¶ 21.

20. One year later, in July 2018, the parties conducted a six-day jury trial on ITW's claims.

21. In that trial, the parties stipulated that Rust-Oleum was referring to Rain-X when it referenced a "leading competitor" on the RainBrella packaging. *See* Jury Charge [Doc. # 157] in the Texas lawsuit, at Stipulations (p. 6). The parties also stipulated that RainBrella is sold in interstate commerce.

---

[1] In the Texas lawsuit, Rust-Oleum stipulated that the "leading competitor" referenced in the representation was Rain-X. Illinois Tool Works is the manufacturer of Rain-X and it was the plaintiff in the Texas lawsuit.

22. Dr. Jiafu Fang, the senior technology manager of ITW, conducted lab tests that consisted of water contact angle, sliding angle and abrasion durability. *See* [Doc. #238-16] in the Texas lawsuit.

23. The results of the tests showed the RainBrella is no better than Rain-X Original Glass Water Repellant. *Id*.

24. Specifically, the test concluded that RainBrella's claim that it "Lasts 2X Longer" than Rain-X could not be substantiated. *Id*.

25. Accordingly, the jury found in the affirmative that "Rust-Oleum is liable for false advertising for making the claim that RainBrella 'Lasts 2X Longer Than Rain-X' and 'Lasts 2X Longer' than 'the leading competitor.'" *Id.* at Question Number 1 (p. 11).

26. The jury also found in the affirmative that "Rust-Oleum is liable for misleading advertising based on its claim that RainBrella 'Lasts Over 100 Car Washes.'" *Id.* at Question Number 3 (p. 15).

27. On appeal, the U.S. Court of Appeals for the Fifth Circuit affirmed in part and reversed in part. The court reversed the jury's verdict related to the "Lasts 100 Car Washes" representation on evidentiary grounds. The appellate court found that there was no evidence introduced at trial to support a finding of materiality—a necessary element to support the Lanham Act claims. The appellate court upheld the jury's other conclusions concerning the "Lasts 2X Longer" representations.

28. After the appellate proceedings, the trial court issued a Final Judgment and Permanent Injunction enjoining Rust-Oleum from using the claim "Lasts 2X Longer" and making representations concerning "RainBrella lasts twice as long as RAIN-X. We ran it through 100 car

6

washes to prove it." *See* Final Judgment and Permanent Injunction (S.D. Tex. Jan. 11, 2021), attached hereto as Exhibit A.

### *Plaintiff's Experience with RainBrella*

29. Plaintiff and her husband have regularly purchased and applied RainBrella to the family's vehicles for several years. Often, they would apply RainBrella multiple times per month.

30. Plaintiff and her husband began purchasing RainBrella in approximately March 2018.

31. Plaintiff purchased RainBrella from Amazon and at two retail locations in and around West Bend, Wisconsin: Menards (located at 575 West Paradise Drive) and Fleet Farm (located 3815 West Washington Street).

32. The last time that Plaintiff purchased RainBrella was approximately December 2020.

33. Plaintiff regularly paid approximately $7.99 for each purchase of RainBrella.

34. Plaintiff's RainBrella purchases contained representations that it "Lasts 2X Longer" and "Lasts Over 100 Car Washes."

35. Plaintiff's RainBrella packages generally had the same appearance and representations as those presented above.

36. Had Plaintiff known that Rust-Oleum's representation that RainBrella "Lasts 2X Longer" than its leading competitor (i.e., Rain-X) was false, she would not have purchased the product.

37. Had Plaintiff known that Rust-Oleum's representation that RainBrella "Lasts Over 100 Car Washes" was false, she would not have purchased the product.

## Class Action Allegations

38. Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks to represent the following proposed Nationwide Class: All persons who purchased RainBrella in the United States between 2016 to the present ("Nationwide Class").

39. Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks to represent the following proposed Wisconsin Class: All persons who purchased RainBrella in Wisconsin between 2016 to the present ("Wisconsin Class").

40. Excluded from the proposed classes are Rust-Oleum; any affiliate, parent, or subsidiary of Rust-Oleum; any entity in which Rust-Oleum has a controlling interest; any officer, director, or employee of Rust-Oleum; any successor or assign of Rust-Oleum; anyone employed by counsel for Plaintiff in this action; any judge to whom this case is assigned; members of the judge's staff; and anyone who purchased RainBrella for the purpose of resale.

41. **Numerosity**. Rust-Oleum sells RainBrella in the United States through major retailers, including Amazon, Wal-Mart, and Target. Members of the proposed classes likely number in the hundreds or thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

42. **Predominance**. Common questions of law and fact exist as to all members of the proposed classes and predominate over questions affecting only individual class members. These common questions include whether:

    a.    RainBrella is defective;

    b.    Rust-Oleum knew or should have known about the defects in RainBrella and, if so, when Rust-Oleum discovered them;

8

    c.    Rust-Oleum disclosed the existence of the defects to potential customers;

    d.    Rust-Oleum concealed or omitted the existence of the defect from potential customers;

    e.    Rust-Oleum misrepresented the efficacy and true nature of RainBrella;

    f.    Rust-Oleum's claim that RainBrella "Lasts 2X Longer" than the leading competitor is false and/or misleading;

    g.    Rust-Oleum's claim that RainBrella "Lasts Over 100 Car Washes" is false and/or misleading;

    h.    Rust-Oleum's conduct harmed Plaintiff and the classes;

    i.    Plaintiff and the proposed classes are entitled to damages; and

    j.    Plaintiff and the proposed classes are entitled to equitable relief, including declaratory relief, restitution, rescission, a preliminary and/or permanent injunction.

43.    **Typicality**. Plaintiff's claims are typical of the claims of the proposed classes. Plaintiff and the proposed classes purchased RainBrella that contain the same false representations, giving rise to substantially the same claims.

44.    **Adequacy**. Plaintiff is an adequate representative of the proposed classes because his interests do not conflict with the interests of the members of the classes he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously by monitoring and directing the actions of class counsel. The interests of members of the classes will be fairly and adequately protected by Plaintiff and her counsel.

45. **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Rust-Oleum economically feasible. Even if class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from Rust-Oleum's RainBrella, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

46. In the alternative, the proposed classes may be certified because:

   a. the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct for Rust-Oleum;

   b. the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

   c. Rust-Oleum has acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed classes as a whole.

## COUNT ONE
### Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*
### (Plaintiff individually and on behalf of the Nationwide Class)

47. Plaintiff, on behalf of herself and the proposed Nationwide Class, hereby re-alleges the paragraphs above as if fully set forth herein.

48. Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

49. There is an actual controversy between Rust-Oleum and Plaintiff concerning:

   a. Whether RainBrella is defective;

   b. Whether Rust-Oleum knew or should have known of the defects;

   c. Whether Rust-Oleum misrepresented, concealed, and/or omitted the nature and quality of RainBrella; and

   d. Whether Rust-Oleum concealed and/or omitted the defective qualities associated with Restore Products.

50. Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

51. Plaintiff seeks a declaration that RainBrella is defective as set forth herein. The defective nature of RainBrella is material and requires disclosure to all consumers who purchased them.

52. The declaratory relief requested herein will generate common answers that will settle the parties' controversy. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

**COUNT TWO**
**Violation of Wisconsin's Deceptive Trade Practices Act ("DTPA")**
**(Plaintiff individually and on behalf of the Wisconsin Class)**

53. Plaintiff, on behalf of herself and the proposed Wisconsin Class, hereby re-alleges the paragraphs above as if fully set forth herein.

54. Rust-Oleum's conduct violates Wis. Stat. § 100.18, which provides that no "firm, corporation or association . . . with intent to sell, distribute, increase the consumptions of … a … merchandise … directly or indirectly, to the public for sale … shall make, publish, disseminate, circulate, or place before the public … in this state, in a … label or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public … which … contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

55. Plaintiff and Wisconsin Class members "suffer[ed] a pecuniary loss because of a violation" of § 100.18. Wis. Stat. § 100.18(11)(b)(2).

56. As alleged throughout this Complaint, Rust-Oleum deliberately engaged in deceptive and unlawful marketing in violation of Wisconsin law by representing to the Wisconsin Class that RainBrella "Lasts 2X Longer" and "Lasts Over 100 Car Washes" in order to induce an obligation.

57. Rust-Oleum's representations that RainBrella "Lasts 2X Longer" and "Lasts Over 100 Car Washes" are false.

58. Rust-Oleum's representations that RainBrella "Lasts 2X Longer" and "Lasts Over 100 Car Washes" materially induced a pecuniary loss to Plaintiff and the Wisconsin Class.

**COUNT THREE**
**Unjust Enrichment**
**(Plaintiff individually and on behalf of the Nationwide Class)**

59. Plaintiff, on behalf of herself and the proposed Nationwide Class, hereby re-alleges the paragraphs as if fully set forth herein.

60. As a result of its wrongful and fraudulent acts and omissions, as set forth above, Rust-Oleum obtained monies that rightfully belong to Plaintiff and the Nationwide Class members to the detriment of Plaintiff and the Nationwide Class members.

61. Rust-Oleum appreciated, accepted and retained the non-gratuitous benefits (i.e. profits) conferred by Plaintiff and the Nationwide Class members who had no knowledge that the advertisements "Lasts 2X Longer" and "Lasts Over 100 Car Washes" depicted on the packaging were false.

62. Plaintiff and the Nationwide Class members either (1) paid a higher price for RainBrella products which actually had a lower value or no value at all, or (2) paid Rust-Oleum monies for RainBrella that Plaintiff and the Nationwide Class members would not have purchased had they been aware that the advertisements "Lasts 2X Longer" and "Lasts Over 100 Car Washes" depicted on the packaging were false.

63. It would be inequitable and unjust for Rust-Oleum to retain these wrongfully obtained profits.

64. Rust-Oleum's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

65. Plaintiff and the Nationwide Class are entitled to restitution of the profits unjustly obtained, plus interest.

## COUNT FOUR
### Breach of Implied Warranty of Merchantability
### (Plaintiff individually and on behalf of the Wisconsin Class)

66. Plaintiff, on behalf of herself and the proposed Wisconsin Class, hereby re-alleges the paragraphs as if fully set forth herein.

67. Wisconsin statute § 402.314 which codifies section 2-314 of the Uniform Commercial Code ("UCC"), imposes in implied warranty of merchantability on the sale of goods by a merchant.

68. Under Wisconsin law, a plaintiff may recover under the provision of section 402.314 by proving:

    a. a merchant sold goods of that kind;

    b. the goods were not fit for the ordinary purposes for which such goods are used;

    c. injury and damages to the plaintiff or her property; and

    d. proximately resulting from any breach of warranty.

69. Under Wis. Stat. § 402.104, Rust-Oleum is a merchant because it is "a person who deals in goods of the kind."

70. Under Wis. Stat. § 402.105, which codifies UCC section 2-105, RainBrella is a good, and Rust-Oleum's sale of RainBrella to Plaintiff was the sale of goods by a merchant.

71. Under Wis. Stat. § 402.314(2), to be "merchantable" goods must be "fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations of face made on the container or label if any."

72. Because RainBrella's statements are false, it is unfit for its ordinary purposes and does not conform to the promise made on the label.

73. As a factual and proximate result of the defective nature of RainBrella, Plaintiff suffered injury and damages.

74. Defendant has not disclaimed the implied warranty of merchantability.

75. Accordingly, Plaintiff is entitled to recover for Rust-Oleum's violation of Wis. Stat. § 402.314.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment awarding the following relief:

a. An order certifying the proposed classes and appointing Plaintiff and her counsel to represent the classes;

b. An order awarding Plaintiff and the class members their actual damages, and/or any other form of monetary relief provided by and pursuant to law;

c. An order awarding Plaintiff and the classes restitution, disgorgement or other equitable relief as the Court deems proper;

d. An order awarding Plaintiff and the classes pre-judgment and post-judgment interest as allowed under the law; and

e. An order awarding Plaintiff and the classes reasonable attorney's fees and costs of suit, including expert witness fees.

### Demand for Jury Trial

Plaintiff demands a trial by jury on all claims so triable.

DATED: March 12, 2021            Respectfully submitted,

**SIMMONS HANLY CONROY LLC**

    */s/ Trent B. Miracle*
Trent B. Miracle (IL 6281491)
Eric Johnson (IL 6301759)
One Court Street
Alton, Illinois 62002
Phone: (618) 259-2222
Fax:    (618) 259-2251
tmiracle@simmonsfirm.com
ejohnson@simmonsfirm.com


Matthew L. Dameron (MO Bar No. 52093)
*pro hac vice forthcoming*
Amy R. Jackson (MO Bar No. 70144)
*pro hac vice forthcoming*
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Telephone:    (816) 945-7135
Facsimile:     (816) 945-7118
matt@williamsdirks.com
amy@williamsdirks.com


Peter Goss (MO Bar No. 57933)
*pro hac vice forthcoming*
**THE GOSS LAW FIRM, P.C.**
1501 Westport Road
Kansas City, Missouri 64111
Telephone:    (816) 839-6452
Facsimile:     (816) 336-1310
pgoss@goss-lawfirm.com

***Counsel for Plaintiff and the Proposed Classes***