**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHAQUAVIA HARRIS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.: 1:21-CV-01376 |
| v. | Honorable Judge Andrea R. Wood |
| RUST-OLEUM CORPORATION, | |
| Defendant. | |

**DEFENDANT RUST-OLEUM CORPORATION'S
MOTION TO DISMISS CLASS ACTION COMPLAINT
AND TO STRIKE ALLEGATIONS RELATING TO CLASS CERTIFICATION**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

      A.    RAINBRELLA ............................................................................... 3

      B.    PLAINTIFF AND HER CLAIMS .......................................................... 3

ARGUMENT ........................................................................................................... 5

I.      PLAINTIFF'S DTPA CLAIM SHOULD BE DISMISSED BECAUSE THE FACTS ALLEGED IN THE COMPLAINT DEMONSTRATE PLAINTIFF COULD NOT HAVE RELIED ON THE LABEL'S STATEMENTS. ........................................................... 5

II.     THE COMPLAINT DOES NOT STATE A CLAIM FOR UNJUST ENRICHMENT. ...................... 8

      A.    Plaintiff's Unjust Enrichment Claim Fails Because Any Benefit Plaintiff Conveyed Was To Retailers, Not Rust-Oleum. ................................... 8

      B.    Under Wisconsin Law, An Unjust Enrichment Claim Does Not Lie Where Plaintiff Received Something Of Value. ................................... 9

      C.    Plaintiff's Unjust Enrichment Claim Must Be Dismissed Because Her Purchases Are Covered By Contract. ........................................... 10

III.    PLAINTIFF'S BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY CLAIM FAILS BECAUSE THERE IS NO PRIVITY, NOTICE, OR BREACH. ........................... 10

      A.    Plaintiff and Rust-Oleum Are Not In Privity. ................................... 10

      B.    Plaintiff Provided No Notice Of Her Claim. ..................................... 12

      C.    The Product Is Not Unfit For Its Ordinary Purpose And Any Warranty Has Not Been Breached. ................................................... 12

IV.    PLAINTIFF'S DECLARATORY JUDGMENT CLAIM IS IMPROPER. ........................................ 14

V.    THE COURT SHOULD STRIKE THE COMPLAINT'S CLASS ALLEGATIONS BECAUSE SIGNIFICANT DIFFERENCES ACROSS STATES' LAWS DEFEAT PREDOMINANCE AND PRECLUDE CERTIFICATION OF PLAINTIFF'S REQUESTED NATIONWIDE CLASS. ........................................................................ 15

      A.    If Certified, The Laws Of All 50 States Would Apply To Plaintiff's Requested Nationwide Unjust Enrichment Class. ........................... 17

      B.    Material Differences Across State Laws Preclude Certification Of A Nationwide Unjust Enrichment Class. ........................................... 18

VI.     A WISCONSIN CLASS CANNOT MEET CAFA'S AMOUNT IN CONTROVERSY
REQUIREMENT. ........................................................................................................21

CONCLUSION............................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

......................................................................................................................... **Page(s)**

*Adkins v. Nestle Purina PetCare Co.*,
   973 F.Supp.2d 905 (N.D. Ill. 2013) .......................................................................17

*Amari v. Radio Spirits, Inc.*,
   219 F.Supp.2d 942 (N.D. Ill. 2002) .......................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................5, 6

*Ball v. Sony Electronics Inc.*,
   No. 05-C-307-S, 2005 WL 2406145 (W.D. Wis. Sept. 28, 2005)................................9, 10, 11

*Bearden v. Honeywell Int'l, Inc.*,
   No. 3:09-01035, 2010 WL 1223936 (M.D. Tenn. Mar. 24, 2010) .........................................19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................5

*Blitz v. Monsanto Co.*,
   317 F.Supp.3d 1042 (W.D. Wis. 2018) .............................................................8, 12

*Carl v. Spickler Enterps., Ltd.*,
   165 Wis.2d 611, 478 N.W.2d 48 (Wis. Ct. App. 1991)..........................................12

*Cole v. Gen. Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) ..............................................................................16

*Coleman v. Estes Express Lines, Inc.*,
   730 F.Supp.2d 1141 (C.D. Cal. 2010) ............................................................13, 21

*Crown Linen Serv., Inc. v. CT Appliance & Fireplace Distribs., LLC*,
   No. HHDCV075011439S, 2009 WL 765531 (Conn. Super. Ct. Feb. 24, 2009)....................20

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014) ...............................................................................................21

*Dews v. Halliburton Indus., Inc.*,
   708 S.W.2d 67 (Ark. 1986)...................................................................................20

*Douglas Cnty. Fed'n v. Douglas Cnty. Sch. Dist. RE-1*,
   325 F.R.D. 355 (D. Colo. 2018) .........................................................................18

*Elward v. Electrolux Home Prods., Inc.*,
    214 F. Supp. 3d 701 (N.D. Ill. 2016) .................................................................................14

*Emirat AG v. High Point Printing LLC*,
    248 F.Supp.3d 911 (E.D. Wis. 2017).................................................................................10

*Estate of Draper v. Bank of Am., N.A.*,
    205 P.3d 698 (Kan. 2009) ................................................................................................20

*Estate of Kriefall v. Sizzler USA Franchise, Inc.*,
    801 N.W.2d 781 (Wis. Ct. App. 2011) ............................................................................10

*First Nat'l Bank of St. Paul v. Ramier*,
    311 N.W.2d 502 (Minn. 1981)..........................................................................................20

*Frazier v. U.S. Bank Nat. Ass'n*,
    No. 11 C 8775, 2013 WL 1337263 (N.D. Ill. Mar. 29, 2013) .........................................15

*Frenzel v. AliphCom*,
    76 F.Supp.3d 999 (N.D. Cal. 2014) .................................................................................17

*Fullerton v. Correlle Brands, LLC*,
    Case Nos. 18-cv-4152, 18-cv -4198, 2019 WL 4750039 (N.D. Ill. Sept 30,
    2019) ...........................................................................................................................15, 16

*Glassey v. Cont'l Ins. Co.*,
    500 N.W.2d 295 (Wis. 1993)............................................................................................12

*Greenlee v. Rainbow Auction/Realty Co., Inc.*,
    202 Wis.2d 653, 553 N.W.2d 257 (Wis. Ct. App. 1996).................................................10

*Hadley v. Kellogg Sales Co.*,
    273 F. Supp. 3d 1052 (N.D. Cal. 2017) ...........................................................................13

*Haley v. Corcoran*,
    659 F.Supp.2d 714 (D. Md. 2009) ...................................................................................20

*Hegel v. Brunswick Corp.*,
    No. 09-C-882, 2010 WL 2900379 (E.D. Wis. July 20, 2010) .........................................18

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020)..............................................................................13

*In re Apple & AT & T iPad Unlimited Data Plan Litig.*,
    802 F.Supp.2d 1070 (N.D. Cal. 2011) .............................................................................20

*In re Aqua Dots Prods. Liab. Litig.*,
    270 F.R.D. 377 (N.D. Ill. 2010).......................................................................................19

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) .......................................................................................16, 17

*In re Gerber Probiotic Sales Practices Litig.*,
    Civil Action No. 12-835(JLL), 2014 WL 1310038 (D.N.J. Mar. 31, 2014) .........................13

*In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*,
    No. MDL 09-2008 AG, 2012 WL 2376975 (C.D. Cal. May 14, 2012) .................................17

*In re: McCormick & Co., Inc.*,
    217 F.Supp.3d 124 (D.D.C. 2016) ........................................................................................18

*In re McDonald's French Fries Litig.*,
    257 F.R.D. 669 (N.D. Ill. 2009).............................................................................................19

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
    Nos. 05 C 4742, 05C 2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006) ............................17

*In re Yasmin and Yaz (Drospirenone) Mktg.*,
    275 F.R.D. 270 (S.D. Ill. 2011) ......................................................................................15, 16

*Jay Dee Contractors, Inc. v. Tews Co., Inc.*,
    787 F.Supp. 160 (E.D. Wis. 1992)..........................................................................................12

*Lamont v. Winnebago Indus., Inc.*,
    569 F.Supp.2d 806 815-16 (E.D. Wis. 2008) ........................................................................11

*LHP, LLC v. Chase Bank USA, N.A.*,
    No. 16 C 8913, 2016 WL 7104289 (N.D. Ill. Dec. 5, 2016) ............................................14, 15

*Limestone Dev. Corp. v. Vill. Of Lemont Ill.*,
    520 F.3d 797 (7th Cir. 2008) .............................................................................................5, 6

*Loeb v. Champion Petfoods USA Inc.*,
    359 F.Supp.3d 597 (E.D. Wis. 2019).......................................................................................8

*Maeda v. Pinnacle Foods Inc.*,
    390 F. Supp. 3d 1231 (D. Haw. 2019) ....................................................................................13

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ..................................................................................................19

*McCoy v. Iberdrola Renewables, Inc.*,
    760 F.3d 674 (7th Cir. 2014) ..................................................................................................17

*McMorrow v. Mondelez Int'l, Inc.*,
    No. 17-CV-02327-BAS-JLB, 2018 WL 3956022 (S.D. Cal. Aug. 17, 2018)........................13

*Meyer v. The Laser Vision Inst.*,
  2006 WI App 70, 290 Wis.2d 764, 714 N.W.2d 223 (Wis. Ct. App. 2006) ........................... 10

*Miles v. Am. Honda Motor Co. Inc.*,
  Case No. 17 C 4423, 2017 WL 4742193 (N.D. Ill. Oct. 19, 2017) ......................................... 15

*Miller v. Am. Art Clay Co. Inc.*,
  28 F.Supp.3d 825 (W. D. Wis. 2014) ................................................................................. 10

*Muehlbauer v. Gen. Motors Corp.*,
  No. 05 C 2676, 2009 WL 874511 (N.D. Ill. March 31, 2009) ............................................... 19

*Paris v. AMOCO Oil Co.*,
  149 F.Supp.2d 478 (N.D. Ill. 2001) ................................................................................... 17

*Partipilo v. Hallman*,
  510 N.E.2d 8 (Ill. App. Ct. 1987) ...................................................................................... 20

*Portillo v. Nat'l Freight, Inc.*,
  169 F.Supp.3d 585 (D.N.J. 2016) ...................................................................................... 21

*Salau v. Denton*,
  139 F. Supp. 3d 989 (W.D. Mo. 2015) ............................................................................... 14

*Sarafin v. Sears, Roebuck and Co., Inc.*,
  446 F. Supp. 611 (N.D. Ill. 1978) ...................................................................................... 17

*St. Paul Mercury Ins. Co. v. Viking Corp.*,
  No. 04-C-1124, 2007 WL 129063 (E.D. Wis. Jan 12, 2007) ............................................ 6, 11

*Standard Fire Ins. Co. v. Knowles*,
  568 U.S. 588 (2013) ........................................................................................................ 20

*Summer Oaks Ltd. P'ship v. McGinley*,
  55 P.3d 1100 (Or. 2002) .................................................................................................. 20

*T&M Farms v. CNH Indus. Am., LLC*,
  488 F.Supp.3d 756 (E. D. Wis. 2020) ....................................................................... 5, 8, 9, 11

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
  819 F.2d 746 (7th Cir. 1987) ............................................................................................ 15

*Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air-Conditioning
Eng'rs, Inc.*,
  775 F.Supp.2d 1082 (E.D. Wis. 2011) .............................................................................. 5, 6

*Tietsworth v. Harley–Davidson, Inc.*,
  677 N.W.2d 233 (Wis. 2004) .............................................................................................. 5

*Truckweld Equip. Co., Inc. v. Olson*,
    618 P.2d 1017 (Wash. Ct. App. 1980) .................................................................18

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ..........................................................................18

*Ver Brycke v. Ver Brycke*,
    843 A.2d 758 (Md. 2004) ...................................................................................20

*Vulcan Golf, LLC v. Google, Inc.*,
    254 F.R.D. 521 (N.D. Ill. 2008) ........................................................................19

*Warciak v. Subway Rests., Inc.*,
    949 F.3d 354 (7th Cir. 2020) ................................................................................5

*Weaver v. Champion Petfoods USA Inc.*,
    Case No. 18-CV-1996-JPS, 2019 WL 2774139 (E.D. Wis. July 1, 2019) ...........8, 9

*Witt v. Jones*,
    722 P.2d 474 (Idaho 1986) .................................................................................20

**Statutes**

28 U.S.C. § 1332(d)(2) .............................................................................................20

Wis. Stat. § 402.314(2)(f) ..................................................................................13, 14

Wis. Stat. § 402.607(3)(a) .......................................................................................12

**Other Authorities**

Fed.R.Civ.P. 23(a), (b)(3) ........................................................................................16

Rule 12(b) .................................................................................................................2

Rule 12(b)(6) ........................................................................................................2, 5

Rule 12(f) ..................................................................................................................2

Rule 23 ....................................................................................................................16

Rule 23(b)(2) .....................................................................................................16, 17

Rule 23(b)(3) ...........................................................................................................16

# INTRODUCTION

The (few) facts the Complaint alleges contradict the basic theory of Plaintiff's case. Plaintiff claims Rust-Oleum's RainBrella car windshield glass treatment (the "Product") does not work for as long as advertised. But the Complaint's factual allegations demonstrate that Plaintiff was pleased with RainBrella; so pleased, in fact, that she purchased and used it *dozens* of times over a period of almost three years. Plaintiff knew the Product. She knew RainBrella's characteristics and properties, its performance, and its durability. Plaintiff was not misled by any supposed misrepresentations on RainBrella's label; her repeated purchases were based on her own (presumably favorable) experiences with the Product. Contrary to Plaintiff's claims, there is no deception and there could be no injury.

The Complaint alleges that Plaintiff and her husband bought and used RainBrella regularly over a period of almost three years (from March 2018 through December 2020).[1] The Complaint asserts that during that time Plaintiff and her husband "[o]ften would apply RainBrella multiple times per month."[2] The Complaint provides no hint that Plaintiff—or any other consumer, anywhere, at any time—was in any way dissatisfied with RainBrella. Plaintiff never complained. To the contrary, Plaintiff kept buying and using it, and buying and using it again, for 32 months.

Then, on January 11, 2021, the United States District Court for the Southern District of Texas issued a final judgment in a lawsuit between Rust-Oleum and one of RainBrella's competitors.[3] That litigation involved findings that a representation on RainBrella's packaging that Rainbrella "Lasts 2X Longer*" was without sufficient substantiation. The plaintiff in that case had also claimed that a second representation on RainBrella's labeling was also false: that RainBrella

---

[1] *Compl.* ¶¶ 29-32.

[2] *Id.* ¶ 29. As RainBrella's packaging indicates, a single unit of the product will cover 2 windshields. *See id.*; Ex. B (RainBrella Product Label).

[3] *Compl.* ¶ 28.

"Lasts Over 100 Car Washes." As to that statement, the Fifth Circuit Court of Appeals vacated the judgment.[4]

Just two months later, after years as a loyal—and by all indications quite satisfied—customer, Plaintiff brought this putative class action asserting claims on behalf of every consumer in the United States who ever purchased RainBrella, alleging that both the "Lasts 2X Longer*" and "Lasts Over 100 Car Washes" representations were false and misleading.

The meritlessness of Plaintiff's claims is reflected in the deficiencies of her pleading. The Complaint does not allege core elements of the claims, including privity, notice, reliance, and injury. Strong grounds exist for dismissal of each of her claims pursuant to Rule 12(b)(6).

In the alternative, the Court should strike Plaintiff's request for certification of a nationwide class pursuant to Rule 12(f) or Rule 12(b), because the sole claim for monetary damages for which Plaintiff seeks nationwide certification is unjust enrichment, which courts consistently hold cannot be certified on a multi-state or nationwide basis due to material differences in unjust enrichment law among the 50 states.

Finally, if the Court strikes Plaintiff's request for a national class, then, at most, Plaintiff would be left with a Wisconsin class. The total sales of RainBrella in Wisconsin during the class period is only $40,807, far below the Class Action Fairness Act's $5 million jurisdictional threshold.[5] Therefore, if the Court strikes Plaintiff's request for a national class, the Court must dismiss the lawsuit for lack of subject matter jurisdiction.

---

[4] *Id.* ¶ 27.
[5] Declaration of S. DiCosola, ¶ 8, Ex. A.

## BACKGROUND

### A.     RainBrella

RainBrella is an inexpensive glass treatment for car windshields that improves visibility in poor weather conditions by repelling rain, mud, and dirt. *Compl.* ¶¶ 2, 12; Ex. B (Product label). The Product is sold in a box containing two cloth wipes saturated with the RainBrella formula, a microfiber buffing cloth, and a pair of gloves. *Id.* ¶¶ 10, 12; Ex. B (Product label). RainBrella is applied by the consumer. Plaintiff paid "approximately $7.99 for each purchase of RainBrella." *Id.* ¶ 33.

### B.     Plaintiff And Her Claims

Plaintiff alleges that she and her husband purchased RainBrella over a period of "several years;" specifically, from approximately March 2018 through December 2020. *Id.* ¶¶ 29-32. During that period, Plaintiff claims that she and her husband would often "apply RainBrella multiple times per month." *Id.* ¶ 29. According to the Complaint, these purchases were not made from Rust-Oleum, they were made from Amazon and two local West Bend, Wisconsin retailers, Menards and Fleet Farm. *Id.* ¶ 31.

Plaintiff claims that two statements on the Product's label are false: (1) Rainbrella "Lasts Over 100 Car Washes," and (2) Rainbrella "Lasts 2X Longer*." *Id.* ¶¶ 3, 4. The Complaint alleges that the asterisk associated with the "Lasts 2X Longer" statement "explains—on the opposite side of the box—that 'Rainbrella and its repellent properties last, on average, at least two times longer versus the leading competitor in a wiper blade abrasion test.'" *Id.* ¶ 4. The Complaint's sole basis for alleging that these statements are false are findings made in a Lanham Act case brought by a competitor against Rust-Oleum in the Southern District of Texas. *Id.* ¶¶ 16-28 (the "Texas Litigation").

3

The Complaint does not allege that Plaintiff (or her husband) were unhappy with RainBrella's performance or durability. Neither Plaintiff nor her husband at any time complained to Rust-Oleum about any aspect of RainBrella or its marketing/labeling. The Complaint does not allege that Plaintiff (or her husband) noticed or even saw either the "Lasts Over 100 Car Washes," or "Lasts 2X Longer*" statement before purchasing RainBrella. The Complaint does not allege what Plaintiff (or her husband) understood either statement to mean. The Complaint does not allege that Plaintiff (or her husband) considered either statement at the time of or before their many purchases. The Complaint does not allege that the statements were material to any of their many separate decisions to purchase RainBrella. Indeed, it seems impossible for Plaintiff to have relied on the statements; Plaintiff used RainBrella multiple times per month—much more frequently than every 100 car washes. Rather, the Complaint alleges in purely conclusory form—and in contradiction to her dozens of purchases and uses of RainBrella over a period of almost three years—that "[h]ad Plaintiff known that Rust-Oleum's representation[s] … [were] false, she would not have purchased the product." *Id.* ¶¶ 36-37.

Plaintiff's alleged injury is that she "paid a higher price for RainBrella products which actually had a lower value or no value at all, or (2) paid Rust-Oleum monies for RainBrella that Plaintiff and the Nationwide Class members would not have purchased had they been aware that the [statements] depicted on the packaging were false." *Id.* ¶ 62. Plaintiff brings claims for declaratory judgment and unjust enrichment on behalf of herself and a putative nationwide class consisting of "[a]ll persons who purchased RainBrella in the United States between 2016 to the present," *id.* ¶¶ 38, 47-52, 59-65; and claims for violation of § 100.18 of Wisconsin's Deceptive Trade Practices Act ("DTPA") and for breach of the implied warranty of merchantability, on behalf of a similarly-defined class of Wisconsin consumers. *Id.* ¶¶ 39, 53-58, 66-75.

**ARGUMENT**

To survive a Rule 12(b)(6) motion, "[a] complaint must allege 'enough facts to state a claim to relief that is plausible on its face." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). For a claim to have facial plausibility, a plaintiff must plead "*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Limestone Dev. Corp. v. Vill. Of Lemont Ill.*, 520 F.3d 797, 803–04 (7th Cir. 2008).

**I.      PLAINTIFF'S DTPA CLAIM SHOULD BE DISMISSED BECAUSE THE FACTS ALLEGED IN THE COMPLAINT DEMONSTRATE PLAINTIFF COULD NOT HAVE RELIED ON THE LABEL'S STATEMENTS.**

To state a claim under the DTPA, "a plaintiff must allege that the defendant (1) with the specified intent, made an 'advertisement, announcement, statement or representation ... to the public', (2) which contains an 'assertion, representation or statement of fact' that is 'untrue, deceptive or misleading,' and (3) that the plaintiff has sustained a pecuniary loss as a result of the 'assertion, representation or statement of fact.'" *Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 775 F.Supp.2d 1082, 1086-87 (E.D. Wis. 2011) (quoting *Tietsworth v. Harley–Davidson, Inc.,* 2004 WI 32, ¶ 39, 270 Wis.2d 146, 677 N.W.2d 233 (Wis. 2004)); *see also T&M Farms v. CNH Indus. Am., LLC*, 488 F.Supp.3d 756, 760 (E. D. Wis. 2020) (same).

The third element—"that the plaintiff has sustained a pecuniary loss as a result of the 'assertion, representation or statement of fact,'" requires actual reliance by the plaintiff on the false or deceptive representation. *Thermal Design, Inc.*, 775 F.Supp.2d at 1089. "[T]he question is whether 'the representation ... *materially induce[d] the plaintiff's decision to act* and [whether the]

plaintiff would have acted in the absence of the representation." *Id.* (quotation omitted) (emphasis in original); *see also, e.g., St. Paul Mercury Ins. Co. v. Viking Corp.,* No. 04-C-1124, 2007 WL 129063, at *26 (E.D. Wis. Jan 12, 2007) ("A plaintiff must … show actual reliance on the representation.").

The Complaint apparently seeks to satisfy this requirement by alleging that "[h]ad Plaintiff known that Rust-Oleum's representation[s] … w[ere] false, she would not have purchased the product." *Compl.* ¶¶ 36-37. This purely conclusory allegation cannot be credited because it contradicts the Complaint's factual allegations and common sense. *See Ashcroft*, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.… [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."); *Limestone Dev. Corp.*, 520 F.3d 797 at 803–04.

Virtually any consumer protection claim requires specific allegations regarding what representations the plaintiff saw, where she saw them, what she understood them to mean, and what they led her to do (usually, purchase the product). Every one of those hallmark allegations is absent from the Complaint. The Complaint does not allege that Plaintiff ever saw or noticed the "Lasts Over 100 Car Washes" or "Lasts 2X Longer*" representations on RainBrella's packaging or anywhere else, offers no hint what Plaintiff understood the representations to mean,[6] and

---

[6] Plaintiff's interpretation and understanding of the representations is critical. In the Texas Litigation a critical issue was what the "Lasts Over 100 Car Washes" representation meant. Rust-Oleum explained that—per its plain language—the statement means that Rust-Oleum conducted a test which showed that RainBrella remained effective after a car was washed 100 times. The plaintiff in the Texas Litigation contended that the statement meant something else altogether; specifically, that it translated to an unspecified time period corresponding to the number of *years* it would take a consumer to wash their car 100 times. The Complaint provides no indication what Plaintiff understood the representations to mean. Without that information, it is impossible to know whether Plaintiff ever considered them to be false or deceptive, or whether the representations materially induced Plaintiff to buy the product. Moreover, irrespective of how the language is interpreted, it could not have impacted Plaintiff because Plaintiff claims to have "often … appl[ied]

provides no facts supporting a finding that the representations "materially induced ... plaintiff's decision to act." *Thermal Design, Inc.*, 775 F. Supp. 2d at 1089.

To the contrary, the factual allegations of the Complaint demonstrate that Plaintiff *could not* have relied on the representations at issue. Plaintiff claims that she "regularly purchased and applied RainBrella to [her] family's vehicles for several years," *Compl.* ¶ 29; specifically, from approximately March 2018 through December 2020. *Id.* ¶¶ 30, 32. During that time, Plaintiff would "often … apply RainBrella multiple times per month." *Id.* ¶ 29. The Complaint thus asserts that Plaintiff bought and used the Product *dozens* of times over a period of almost *three years*, and that during that time Plaintiff would apply the Product every few weeks. *Id.* ¶¶ 29-32. There can be no question that Plaintiff fully understood RainBrella's characteristics, including how long it lasted. In short, Plaintiff has pleaded herself out of her own claim for reliance on Rust-Oleum's representations: by applying the Product "multiple times per month," she could not possibly have been relying on it lasting over 100 car washes, and cannot possibly assert that she was misled to her detriment.

This leads to two inescapable conclusions. First, in light of the number of times she purchased and used the Product, Plaintiff clearly was satisfied with its performance. Second, to the extent Plaintiff saw the representations at all (which, again, the Complaint conspicuously fails to allege), they were not material to her purchase decision. Either Plaintiff understood that the representations did not promise months or years of protection (and thus were not false), or, if she believed they were false, she simply didn't care, as evidenced by her long-term, repeated purchases and uses of the Product. Either way, the factual allegations of the Complaint refute any inference

---

RainBrella multiple times per month," *Compl.* ¶ 29, and no consumer washes their car hundreds of times each month.

that Plaintiff relied on any misrepresentation regarding the Product's durability, as required to sustain her DTPA claim.

## II.    THE COMPLAINT DOES NOT STATE A CLAIM FOR UNJUST ENRICHMENT.

### A.    Plaintiff's Unjust Enrichment Claim Fails Because Any Benefit Plaintiff Conveyed Was To Retailers, Not Rust-Oleum.

The elements of an unjust enrichment claim under Wisconsin law are "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Weaver v. Champion Petfoods USA Inc.*, Case No. 18-CV-1996-JPS, 2019 WL 2774139, at *6 (E.D. Wis. July 1, 2019) (quoting *Sands v. Menard*, 904 N.W.2d 789, 798 (Wis. 2017)).

The first requirement is interpreted strictly: "The conferral of the benefit must be directly from the plaintiff to the defendant and not, for instance, a third-party retailer." *Id.*; *see also T&M Farms*, 488 F.Supp.3d at 769 (E. D. Wis. 2020) (granting motion to dismiss because, *inter alia*, "[i]f the benefit conferred was payment of the purchase price for the [product], then the plaintiffs conferred the benefit on [defendant]'s dealers rather than on [defendant]"); *Loeb v. Champion Petfoods USA Inc.*, 359 F.Supp.3d 597, 605 (E.D. Wis. 2019) ("it is undisputed that Plaintiff bought Orijen in various pet supply stores, not from Defendants directly. Consequently, the first element is also left wanting. The unjust enrichment claim cannot go to the jury."); *Blitz v. Monsanto Co.*, 317 F.Supp.3d 1042, 1056 (W.D. Wis. 2018) ("[Precedent] would strongly suggest plaintiff's allegation that he purchased Roundup from Home Depot is insufficient to plead a claim of unjust enrichment against defendant, since plaintiff conferred a benefit on Home Depot, not defendant.").

Plaintiff alleges that she purchased RainBrella from third-party retailers (Amazon, Menards, and Fleet Farm), not from Rust-Oleum. *Compl.* ¶ 31. She cannot satisfy the first element of her unjust enrichment claim.

**B.      Under Wisconsin Law, An Unjust Enrichment Claim Does Not Lie Where Plaintiff Received Something Of Value.**

Under Wisconsin law, "[u]njust enrichment involves getting something for nothing, not providing a product for a price." *T&M Farms*, 488 F.Supp.3d at 769 (quoting *Weaver*, 2019 WL 2774139, at *6). A claim that a plaintiff overpaid for a product because it was defective or otherwise inadequate is not cognizable. For example, *Ball v. Sony Electronics Inc.*, No. 05-C-307-S, 2005 WL 2406145 (W.D. Wis. Sept. 28, 2005), was a class action relating to camcorders with a defective part defendant Sony knew was likely to fail, rendering the camcorders "inoperable," and requiring repairs costing $200. *Id.* at *1. The court dismissed the unjust enrichment claim, holding that "under such circumstances any remedy must be based on the law of contract and warranty, not unjust enrichment. Unjust enrichment is not a mechanism for supplementing that which a purchaser perceives as inadequate contractual remedies." *Id.* at *6. Similarly, *Weaver* dismissed an unjust enrichment claim alleging that defendant's "premium" pet food was contaminated with impurities, *Weaver*, 2019 WL 2774139, at *1, ruling "Plaintiff did receive something, just not something of the quality he desired.… [H]e has adequate legal avenues to redress this concern. Plaintiff need not resort to a parallel equitable theory of recovery." *Id.* at *6. *See also T&M Farms*, 488 F.Supp.3d at 769 (dismissing unjust enrichment claim where "the plaintiffs allege that the products did not meet their expectations, which they formed after viewing [defendant]'s allegedly deceptive advertising. But the sale of the products were subject to the terms and conditions that the plaintiffs agreed to at the time of sale. If a product did not meet expectations, the plaintiffs were entitled to pursue their contract remedies against their dealers.").

Plaintiff does not claim she did not receive the Products she repeatedly purchased; she claims she either would not have purchased them or would not have "paid a higher price" for them had she known the label was false. *Compl.* ¶ 62. As the authorities discussed above illustrate, Wisconsin courts consistently reject precisely this theory of unjust enrichment.

### C.      Plaintiff's Unjust Enrichment Claim Must Be Dismissed Because Her Purchases Are Covered By Contract.

"Unjust enrichment is a quasi-contractual theory based in equity; it applies only in the absence of a contract." *Emirat AG v. High Point Printing LLC*, 248 F.Supp.3d 911, 936 (E.D. Wis. 2017); *see also Ball*, 2005 WL 2406145, at *6 (same); *Meyer v. The Laser Vision Inst.*, 2006 WI App 70, ¶¶ 25, 28, 290 Wis.2d 764, 714 N.W.2d 223 (Wis. Ct. App. 2006) (affirming dismissal of unjust enrichment claim, noting that "[e]quitable claims based on a contract are not permitted"); *Greenlee v. Rainbow Auction/Realty Co., Inc.*, 202 Wis.2d 653, 671, 553 N.W.2d 257 (Wis. Ct. App. 1996) ("The doctrine of unjust enrichment does not apply where the parties have entered into a contract.").

A consumer's purchase of goods is governed by contract. *See Ball*, 2005 WL 2406145, at *6 ("There is no question that plaintiffs entered into contracts for the purchase of their camcorders."). Plaintiff's purchases of RainBrella are no different. Because her purchases are governed by contract (the sales contract), her unjust enrichment claim cannot stand.

### III.      PLAINTIFF'S BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY CLAIM FAILS BECAUSE THERE IS NO PRIVITY, NOTICE, OR BREACH.

### A.      Plaintiff and Rust-Oleum Are Not In Privity.

"Wisconsin has always required privity of contract in an action for a breach of implied warranty." *Miller v. Am. Art Clay Co. Inc.*, 28 F.Supp.3d 825, 829 (W. D. Wis. 2014) (quoting *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 335 Wis.2d 151, 801 N.W.2d 781, 816 (Wis. Ct.

App. 2011)). Under Wisconsin law, in a consumer transaction, privity exists only between the buyer and the immediate seller; the buyer is not in privity with a remote manufacturer:

> Some courts in other jurisdictions have judicially imposed an implied warranty of merchantability on the part of manufacturers that arises independently of any direct sale to, or privity with, the ultimate buyer. Wisconsin, however, has not joined those states that have done so and instead affirmed the principle that privity of contract must exist between a buyer and seller in order to create an implied warranty …, refusing to abrogate the privity requirement in warranty law.

*Lamont v. Winnebago Indus., Inc.*, 569 F.Supp.2d 806 815-16 (E.D. Wis. 2008). *See also St. Paul Mercury Ins. Co.*, 2007 WL 129063, at *23 ("Privity of contract is the relation that exists between two ... contracting parties, and in cases of defective products this privity of contract is usually that between buyer and seller." (quotation omitted)); *Ball*, 2005 WL 2406145, at *4 ("The implied warrant[y] of merchantability …, by [its] terms [is] created only between seller and buyer as part of the sales contract….").

For example, in *Ball*, the buyers of camcorders were not in privity with the manufacturer when the camcorders were purchased from an "authorized distributor." *Ball*, 2005 WL 2406145, at *4-5. The consumers were "the beneficiar[ies] of implied warranties only from their immediate sellers." *Id.* at *4. *See also T&M Farms*, 488 F.Supp.3d at 764-65 (dismissing warranty claim against manufacturer where machines were purchased from independent dealers); *Lamont*, 569 F.Supp.2d at 815-16 (granting summary judgment for defendant manufacturer where plaintiff purchased motor home from dealership, holding that "since there was no contract or sale between the [plaintiffs] and [manufacturer], no implied warranties could have arisen as between those parties").

Plaintiff purchased the Product "from Amazon and at two retail locations in and around West Bend, Wisconsin: Menards (located at 575 West Paradise Drive) and Fleet Farm (located 3815 West Washington Street)." *Compl.* ¶ 31. She does not allege that she purchased the Product

11

from Rust-Oleum. Therefore, the Complaint has not alleged privity between Plaintiff and the defendant, and her breach of implied warranty claim must be dismissed.

### B. Plaintiff Provided No Notice Of Her Claim.

In asserting a claim for breach of implied warranty a plaintiff "must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Wis. Stat. § 402.607(3)(a); *see also Glassey v. Cont'l Ins. Co.*, 500 N.W.2d 295, 300 (Wis. 1993) (observing that notice requirement applies to implied warranty claim); *Carl v. Spickler Enterps., Ltd.*, 165 Wis.2d 611, 478 N.W.2d 48, 53 (Wis. Ct. App. 1991) (applying §402.607 to implied warranty of merchantability claim). "The buyer must provide this notice before commencing an action." *Id.* "Importantly, Wisconsin law does not appear to recognize any exceptions to the notice requirement. Wisconsin courts have held that "[s]uch notice is a condition precedent to a right of recovery." *Blitz*, 317 F.Supp.3d at 1054.

Plaintiff has not alleged she provided notice of her claim (and indeed provided none). She is therefore "barred from any remedy," and her claim must be dismissed. Wis. Stat. § 402.607(3)(a).

### C. The Product Is Not Unfit For Its Ordinary Purpose And Any Warranty Has Not Been Breached.

The Complaint asserts that "[b]ecause RainBrella's statements are false, it is unfit for its ordinary purposes," and thus is not merchantable. *Compl.* ¶ 72. This misconstrues the applicable legal standard. A product is unmerchantable if it is not fit for its ordinary purpose. "[T]he ordinary purposes for which goods are used are those … which are customarily made of the goods in question." *Jay Dee Contractors, Inc. v. Tews Co., Inc.*, 787 F.Supp. 160, 164 (E.D. Wis. 1992) (quoting U.C.C. § 2–315 Comment 2).

The Complaint defines RainBrella's ordinary purpose as "to repel rain, mud, and dirt from automotive glass." *Compl.* ¶ 2. But the Complaint nowhere alleges that RainBrella fails to effectively do any of those things. To the contrary, Plaintiff's repeated purchases and uses of the Product over a nearly three-year period refutes any such suggestion; the sheer number of times Plaintiff purchased and used RainBrella clearly demonstrates that she believed that RainBrella worked just fine. *See* pp. 3-4, *supra*. If anything, the Complaint's factual allegations therefore strongly suggest that RainBrella performed its "ordinary purpose," and performed it well. The Complaint thus fails to plead any defect or inadequate performance that could serve as the basis for a breach of implied warranty of merchantability claim.

The Complaint further alleges that "to be 'merchantable' goods must [also] … 'conform to the promises or affirmations of face [sic] made on the container or label if any.'" *Compl.* ¶ 71 (quoting Wisc. Stat. 402.314(2)). This assertion appears to refer to Wis. Stat. § 402.314(2)(f), which provides that "[g]oods to be merchantable must be at least such as: … (f) Conform to the promises or affirmations of fact made on the container or label if any."

Defendant has found no case discussing this provision. However, courts considering parallel provisions in other states' warranty laws have often dismissed such claims under two scenarios. First, because such claims rely on affirmative representations by the manufacturer, courts dismiss such claims where the plaintiff fails to allege a cognizable *express* warranty claim. *See, e.g.*, *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 470 (S.D.N.Y. 2020) ("when an implied warranty of merchantability cause of action is based solely on whether the product in dispute conforms to the promises or affirmations of fact on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product"); *Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1255 (D. Haw. 2019)

(same); *McMorrow v. Mondelez Int'l, Inc.*, No. 17-CV-02327-BAS-JLB, 2018 WL 3956022, at *13 (S.D. Cal. Aug. 17, 2018) (same); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1096 (N.D. Cal. 2017) (same). Second, courts dismiss such claims where the product is not unfit for its ordinary purposes. *See In re Gerber Probiotic Sales Practices Litig.*, Civil Action No. 12-835(JLL), 2014 WL 1310038, at *14 (D.N.J. Mar. 31, 2014) ("Plaintiffs have cited no authority that … a breach of the warranty of merchantability can be established without a showing that the products at issue were not fit for their general purpose.… [I]n order to allege a breach of the implied warranty of merchantability, a plaintiff is "require[d to make] a showing regarding the product's functionality, not the advertisements that allegedly induced a customer to purchase it.").

Here, Plaintiff does not allege a cognizable express warranty claim; Plaintiff does not allege an express warranty claim at all, or even that she ever attempted to avail herself of any express warranty. And, as discussed above, the Complaint refutes the suggestion that the Product is not fit for its ordinary purposes. Therefore, to the extent Plaintiff's claim rests on Wis. Stat. § 402.314(2)(f), it should be dismissed.

## IV. PLAINTIFF'S DECLARATORY JUDGMENT CLAIM IS IMPROPER.

Plaintiff's declaratory judgment claim should be dismissed for at least three reasons. First, "a declaratory judgment is a form of relief, not an independent cause of action." *LHP, LLC v. Chase Bank USA, N.A.*, No. 16 C 8913, 2016 WL 7104289, at *6 (N.D. Ill. Dec. 5, 2016); *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 708 (N.D. Ill. 2016) ("It is well established that the Declaratory Judgment Act does not create an independent cause of action. It provides only an additional form of relief.").

Second, "[a] successful action for declaratory judgment requires a viable underlying cause of action." *Salau v. Denton*, 139 F. Supp. 3d 989, 1012 (W.D. Mo. 2015) (dismissing claim and

citing cases). Because Plaintiff's other claims all fail (as set out above), there is no basis for declaratory relief, whether as an independent claim or otherwise.

Third, the declaration Plaintiff seeks—that the Products are defective, *Compl.* ¶ 51—is not a proper subject for declaratory judgment. Plaintiff must prove such defectiveness in order to prevail on each of her claims, thus leaving the requested declaration to—impermissibly—"serve no useful purpose." *Amari v. Radio Spirits, Inc.*, 219 F.Supp.2d 942, 944 (N.D. Ill. 2002) ("Where the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action 'serve[s] no useful purpose' because the controversy has 'ripened' and the uncertainty and anticipation of litigation are alleviated.") (quoting *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987)). For example, in *LHP, LLC*, 2016 WL 7104289, at *6, the "[p]laintiffs' declaratory judgment claim relie[d] on the exact same assertions as its [sic] breach of contract claim;" the Court therefore held that, "because the Court will necessarily address those issues as part of the Plaintiff's substantive claims, dismissal of this Count is appropriate." *Id.*; *see also Frazier v. U.S. Bank Nat. Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *12 (N.D. Ill. Mar. 29, 2013) ("Plaintiff seeks a declaration on the issues that the Court will decide in addressing Plaintiff's substantive claims. District courts in this District routinely exercise their discretion to decline to hear declaratory judgment actions on this basis.").

## V. THE COURT SHOULD STRIKE THE COMPLAINT'S CLASS ALLEGATIONS BECAUSE SIGNIFICANT DIFFERENCES ACROSS STATES' LAWS DEFEAT PREDOMINANCE AND PRECLUDE CERTIFICATION OF PLAINTIFF'S REQUESTED NATIONWIDE CLASS.

When it is clear that Rule 23's requirements cannot be satisfied, courts routinely grant motions to strike or to dismiss requests for class certification. *See, e.g., Fullerton v. Correlle Brands, LLC*, Case Nos. 18-cv-4152, 18-cv-4198, 2019 WL 4750039, at *14-15 (N.D. Ill. Sept 30, 2019) (granting motion to strike at the pleading stage "because the difficulty in Plaintiffs' claims stem from the variance in the substantive law, which discovery cannot cure"); *Miles v. Am. Honda*

*Motor Co. Inc.*, Case No. 17 C 4423, 2017 WL 4742193, at *5 (N.D. Ill. Oct. 19, 2017) ("courts may strike class allegations at the pleading stage when they are facially and inherently deficient"); *In re Yasmin and Yaz (Drospirenone) Mktg.*, 275 F.R.D. 270, 274 (S.D. Ill. 2011) (granting motion to strike or dismiss class claims where "it [wa]s evident that individual questions of law and fact predominate").

The Rule 23 requirements of predominance (and, likely, typicality and superiority) cannot be satisfied where there are material differences in the laws that would have to be applied, and courts regularly strike or dismiss requests for certification of national classes at the pleadings stage on that basis. *Fullerton*, 2019 WL 4750039, at *14-15 (striking nationwide class allegations where "the variance between state law [on the asserted warranty and unjust enrichment claims] … means that … individual questions will predominate, [and] the proposed nationwide classes do not and cannot satisfy Rule 23(b)(3)'s predominance and manageability requirements"); *In re Yasmin and Yaz (Drospirenone) Mktg.*, 275 F.R.D. at 275 (striking class allegations at the pleadings stage because "[t]he commonality and superiority requirements of Rule 23(b)(3) cannot be met unless all litigants are governed by the same legal rules."); *see also Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724-26 (5th Cir. 2007) ("variations in state law may swamp any common issues and defeat predominance."); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of Fed.R.Civ.P. 23(a), (b)(3).").

A.    **If Certified, The Laws Of All 50 States Would Apply To Plaintiff's Requested Nationwide Unjust Enrichment Class.**

The Complaint seeks certification of a national class for only one claim seeking monetary damages: unjust enrichment.[7] A nationwide class would require application of the unjust enrichment laws of each of the 50 states.

"Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). Thus, Illinois choice-of-law rules apply here. *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, Nos. 05 C 4742, 05C 2623, 2006 WL 3754823, at *2 (N.D. Ill. Dec. 18, 2006). Illinois follows the Restatement (Second) of Conflict of Laws (1971): §221 (unjust enrichment). *Paris v. AMOCO Oil Co.*, 149 F.Supp.2d 478 (N.D. Ill. 2001).

Restatement section 221 refers to the Restatement § 6 "most significant relationship" test. In applying the most significant relationship test, Illinois courts consider the place of the injury, the place where the injury-causing conduct occurred, the domicile of the parties, and the place where the relationship between the parties is centered, with the place of the injury ordinarily being the overriding factor. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1017; *Adkins v. Nestle Purina PetCare Co.*, 973 F.Supp.2d 905, 914 (N.D. Ill. 2013); *In re Sears,* 2006 WL 3754823, at *2; *Paris*, 149 F.Supp.2d at 480.

---

[7] Plaintiff also seeks certification of a national class as to her declaratory judgment claim. *Compl.* at 11. As discussed above, that claim should be dismissed. *See* Section IV, *supra*. Even if it survived, a declaratory judgment claim does not satisfy Rule 23(b)(3), and in this case cannot support certification under Rule 23(b)(2) because Plaintiff seeks primarily—indeed, virtually exclusively—monetary relief, and "[t]he use of a declaratory judgment in a class action where the real goal is a damage award undermines the purpose of Rule 23(b)(2)." *Sarafin v. Sears, Roebuck and Co., Inc.*, 446 F. Supp. 611, 615 (N.D. Ill. 1978).

This means that, for almost all of the putative class members, it will be their home state's law that governs—where they reside, where they purchased and used the Product, and where their alleged injuries occurred.[8] For Plaintiff's requested nationwide unjust enrichment class, that would require application of the laws of all 50 states.

**B.    Material Differences Across State Laws Preclude Certification Of A Nationwide Unjust Enrichment Class.**

Due to the equitable nature of unjust enrichment and the inherent need to evaluate the benefits realized by both plaintiff and defendant on a transaction-by-transaction basis, courts consistently hold that unjust enrichment claims are especially poor candidates for certification of even single-state classes. "[D]emonstrating that individual questions will not predominate common questions is particularly problematic where a claim of unjust enrichment is asserted." *Hegel v. Brunswick Corp.*, No. 09-C-882, 2010 WL 2900379, at *5 (E.D. Wis. July 20, 2010). "Common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009); *see also Douglas Cnty. Fed'n v. Douglas Cnty. Sch. Dist. RE-1*, 325 F.R.D. 355, 367 (D. Colo. 2018) ("Because of the individualized nature of each class member's intentions and expectations, courts generally find that unjust enrichment claims are not appropriately certified for class treatment, as common questions will rarely, if ever, predominate.") (internal quotation marks omitted); *In re: McCormick & Co., Inc.*, 217 F.Supp.3d 124, 145 (D.D.C. 2016) (collecting cases).

As a leading treatise observes,

---

[8] In a class action, "[p]rospective class members have a due process right to have their claims governed by the state law applicable to their dispute." *In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*, No. MDL 09-2008 AG, 2012 WL 2376975, at *6 (C.D. Cal. May 14, 2012). Accordingly, a court must decide choice of law issues at or before class certification. *See Frenzel v. AliphCom*, 76 F.Supp.3d 999, 1007 (N.D. Cal. 2014). When "further development of the factual record is not reasonably likely to materially impact the choice of law determination," a court may determine choice of law on a motion to dismiss. *Id.*

> [t]he majority view is that unjust enrichment claims usually are not amenable to class treatment because the claim requires evaluation of the individual circumstances of each claimant to determine whether a benefit was conferred on defendant and whether the circumstances surrounding each transaction would make it inequitable for the Defendant to fail to return the benefit to each claimant.

1 McLaughlin on Class Actions § 5:60 (17th ed.).

For example, Plaintiff has failed to show how she and other putative class members (other than through mini-trials), (1) can prove which putative class members relied on the alleged misrepresentations, or (2) can separate those who are satisfied with their purchase. Someone who got what they bargained for cannot prevail on an unjust enrichment claim. *See, e.g., Truckweld Equip. Co., Inc. v. Olson*, 618 P.2d 1017, 1022 (Wash. Ct. App. 1980). Some putative class members may claim they relied on the representations at issue; others may have never noticed them. Some putative class members may contend they were injured; others may be completely satisfied with their purchases. *See Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010 WL 1223936, at *10–11 (M.D. Tenn. Mar. 24, 2010) (finding no predominance where "there are undoubtedly many other class members who are satisfied with" the product sold by defendants; "for their money, the consumers received a product that met their expectations and performed adequately"). This problem is particularly acute in this case, where there is only a single named plaintiff—who by all indications was perfectly happy with RainBrella—and no suggestion that any other consumers have had any issue with the Product or its marketing. *See* Section II.B, *supra*. There is no indication that there is a widespread problem, let alone the type of uniform dissatisfaction that is necessary (albeit not sufficient) for certifying an unjust enrichment class.

These problems are exponentially exacerbated by the need to apply the materially different unjust enrichment laws of the 50 states. As this Court previously held, "the law of unjust enrichment varies too much from state to state to be amenable to national or even to multistate

class treatment." *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010); *see also Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 591 (9th Cir. 2012) ("The elements necessary to establish a claim for unjust enrichment … vary materially from state to state."); *Muehlbauer v. Gen. Motors Corp.*, No. 05 C 2676, 2009 WL 874511, at *5-6 (N.D. Ill. March 31, 2009) ("[u]njust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone among the fifty states"); *In re McDonald's French Fries Litig.*, 257 F.R.D. 669, 673-74 (N.D. Ill. 2009) ("Numerous courts, including the Seventh Circuit, have … [o]verwhelmingly … found material conflicts among the fifty states' laws on [unjust enrichment] claims … and have denied class certification."); *Vulcan Golf, LLC v. Google, Inc.*, 254 F.R.D. 521, 531-34 (N.D. Ill. 2008) (the "morass" of differences in state unjust enrichment laws has led courts to refuse to certify nationwide unjust enrichment classes).

Material differences in state laws for unjust enrichment include:

1. Whether unjust enrichment is permitted as a standalone claim. *Compare, e.g.*, *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F.Supp.2d 1070, 1077 (N.D. Cal. 2011) (no cause of action), *with, e.g.*, *Haley v. Corcoran*, 659 F.Supp.2d 714, 724 (D. Md. 2009) (recognizing claim).

2. The state of mind required. *Compare, e.g., Summer Oaks Ltd. P'ship v. McGinley,* 55 P.3d 1100, 1104 (Or. 2002) (requiring "awareness" of benefit received); *with, e.g., Dews v. Halliburton Indus., Inc.,* 708 S.W.2d 67, 69 (Ark. 1986) (no particular requirement).

3. The level of fault required. *Compare, e.g.*, *First Nat'l Bank of St. Paul v. Ramier,* 311 N.W.2d 502, 504 (Minn. 1981) (requiring unlawful conduct); *with, e.g.*, *Witt v. Jones*, 722 P.2d 474, 484 (Idaho 1986) (no such requirement).

4.      The availability of affirmative defenses. *Compare, e.g.*, *Partipilo v. Hallman*, 510 N.E.2d 8, 12 (Ill. App. Ct. 1987) (prohibiting laches defense), *with Crown Linen Serv., Inc. v. CT Appliance & Fireplace Distribs., LLC*, No. HHDCV075011439S, 2009 WL 765531, at *5 (Conn. Super. Ct. Feb. 24, 2009) (permitting laches defense).

5.      The accrual date for a claim. *Compare, e.g.*, *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 775 (Md. 2004) (accruing upon discovery), *with, e.g., Estate of Draper v. Bank of Am., N.A.*, 205 P.3d 698, 715 (Kan. 2009) (accruing when enrichment "becomes unjust").

Plaintiff's requested national unjust enrichment class cannot be certified. The Court should strike allegations relating to that request.

## VI.    A WISCONSIN CLASS CANNOT MEET CAFA'S AMOUNT IN CONTROVERSY REQUIREMENT.

Plaintiff asserts subject matter jurisdiction under the Class Action Fairness Act ("CAFA"). *Compl.* ¶ 7. As the Complaint acknowledges, in order to exercise jurisdiction under CAFA the amount in controversy must "exceed[ ] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2); *see also Compl.* ¶ 7.

To calculate the amount in controversy for purposes of evaluating whether CAFA's $5,000,000 requirement has been met, "CAFA instructs courts 'to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Portillo v. Nat'l Freight, Inc.,* 169 F.Supp.3d 585, 597 (D.N.J. 2016) (quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)). In performing this calculation, "A defendant's 'plausible allegations' regarding the amount in controversy will … ordinarily suffice." *Id.* (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014)). Where a defendant submits a "detailed damages affidavit, this issue becomes relatively straightforward." *Id.*; *see also Coleman v. Estes*

*Express Lines, Inc.*, 730 F.Supp.2d 1141, 1148 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("In deciding the amount in controversy [under CAFA], … the Court may also consider summary-judgment type evidence….").

Mr. DiCosoloa's declaration provides just such a detailed damages affidavit. It shows that the "restitution of [Rust-Oleum's] profits" Plaintiff seeks cannot exceed the cost of the RainBrella purchased by class members. *See Compl.* ¶ 65. If the Court strikes Plaintiff's request for certification of a national class, than, at most, Plaintiff is left with a Wisconsin class. The total sales of RainBrella in Wisconsin since January 1, 2016 is only $40,807, DiCosola Decl. ¶ 8 & Ex. A,[9] far below CAFA's $5,000,000 jurisdictional threshold. Because CAFA's requirements clearly are not met as to a Wisconsin class, if the Court strikes the request for certification of a national class then it should dismiss the case for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice pursuant to Rule 12(b)(6). In the alternative, the Court should dismiss or strike the Complaint's request for a nationwide class under Rule 12(f) or 12(b), and dismiss the case for lack of jurisdiction under the Class Action Fairness Act.

---

[9] This date corresponds with the definition of Plaintiff's proposed class. *Compl.* ¶ 39.

Dated: May 4, 2021

By: */s/ Madison C. Shepley*
Anthony J. Monaco
Madison C. Shepley
**SWANSON, MARTIN & BELL, LLP**
330 North Wabash, Suite 3300
Chicago, Illinois 60611
Office: 312-321-9100
Fax: 312-321-0990
amonaco@smbtrials.com
mshepley@smbtrials.com

Charles W. Steese #26924CO*
IJay Palansky #53431CO*
Alec Harris #47547CO*
Ashleigh Kaspari #53989CO*
**ARMSTRONG TEASDALE LLP**
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
(720) 200-0676
(720) 200-0679 (fax)
csteese@atllp.com
ipalansky@atllp.com
aharris@atllp.com
akaspari@atllp.com
*pro hac vice pending*

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2021, I served a copy of the foregoing via electronic mail on Plaintiff's counsel of record:

Trent B. Miracle (IL 6281491)
Eric Johnson (IL 6301759)
**SIMMONS HANLY CONROY**
One Court Street
Alton, Illinois 62002
tmiracle@simmonsfirm.com
ejohnson@simmonsfirm.com

Matthew L. Dameron (MO Bar No. 52093)
Amy R. Jackson (MO Bar No. 70144)
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
matt@williamsdirks.com
amy@williamsdirks.com

Peter Goss (MO Bar No. 57933)
**THE GOSS LAW FIRM, P.C.**
1501 Westport Road
Kansas City, Missouri 64111
pgoss@goss-lawfirm.com

Jay Barnes
**SIMMONS HANLY CONROY**
231 S. Bemiston Ave., Ste. 525
St. Louis, MO 63105
jaybarnes@simmonsfirm.com

Mitchell M. Breit
**SIMMONS HANLY CONROY**
112 Madison Ave. 7th Floor
New York, New York 10015
mbreit@simmonsfirm.com

/s/ Madison C. Shepley