IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAQUAVIA HARRIS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>      v.<br><br>RUST-OLEUM CORPORATION,<br><br>        Defendant. | No. 21-cv-01376<br><br>Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Defendant Rust-Oleum Corporation ("Rust-Oleum") sells RainBrella, an inexpensive glass treatment for car windshields to help repel rain, mud, and dirt. RainBrella's packaging includes statements that it "Lasts 2X Longer" than a leading competitor and "Lasts Over 100 Car Washes." Plaintiff Shaquavia Harris, who purchased and used RainBrella, has sued Rust-Oleum claiming that these representations are false and has invoked federal jurisdiction on the basis of the Class Action Fairness Act ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (2005). Two of the four counts (Counts I and III) are brought both individually and on behalf of a proposed nationwide class, while the remaining counts (Counts II and IV) are brought both individually and on behalf of a proposed Wisconsin statewide class. Rust-Oleum has now filed a motion to dismiss the complaint, claiming that Harris fails to allege the core elements of each of her claims. (Dkt. No. 20.) In the alternative, Rust-Oleum asks the Court to strike Harris's request for certification of a nationwide class. Additionally, Rust-Oleum contends that if the Court strikes Harris's request for a nationwide class, the remainder of the complaint must be dismissed for lack of subject matter jurisdiction. For the reasons given below, the Court grants Rust-Oleum's motion to dismiss as to

Counts I, III, and IV, denies the motion as to Count II, and grants the motion to strike the nationwide class allegations.

## BACKGROUND

For purposes of Rust-Oleum's motion to dismiss, the Court accepts all well-pleaded facts in Harris's complaint as true and views them in the light most favorable to Harris as the non-moving party. *See Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). The complaint alleges as follows.

RainBrella is a glass treatment product sold by Rust-Oleum that is designed to increase car windshield visibility by repelling rain, mud, and dirt. (Compl. ¶¶ 2, 9, Dkt. No. 1.) RainBrella is sold in a box containing two supersaturated cloth wipes, and consumers may purchase it from Rust-Oleum's website, Amazon, and general merchandise retailers like Menards, Home Depot, and Wal-Mart. (*Id.* ¶¶ 10, 15.) On the front of the packaging, RainBrella represents that it "Lasts Over 100 Car Washes" and "Lasts 2X Longer*." (*Id.* ¶¶ 3–4.) The asterisk associated with the latter representation explains that on average RainBrella's repellent properties lasted two times longer than those of the leading competitor in a wiper blade abrasion test. (*Id.*)

In July 2017, Illinois Tool Works ("ITW"), which manufactures a similar water repellent product called Rain-X, filed a Lanham Act case against Rust-Oleum alleging that RainBrella's representations were false and misleading. (*Id.* ¶¶ 16–17.) After a six-day jury trial in 2018, the jury found that Rust-Oleum was liable for false advertising based on the claim that RainBrella "Lasts 2X Longer" than the leading competitor and liable for misleading advertising based on the claim that RainBrella "Lasts Over 100 Car Washes." (*Id.* ¶¶ 20, 25–26.) The Fifth Circuit upheld the jury's verdict relating to the "Lasts 2X Longer" representations but reversed the verdict relating to the "Lasts Over 100 Car Washes" representation, holding that there was no evidence

2

to support a finding of materiality (a necessary element of ITW's Lanham Act claims). (*Id.* ¶ 27.) After the appellate proceedings concluded, the trial court issued a Final Judgment enjoining Rust-Oleum from using the claim "Lasts 2X Longer" and making representations as to RainBrella's performance as compared to Rain-X. (*Id.* ¶ 28.)

For several years, Harris and her husband regularly purchased RainBrella and applied it to their vehicles. (*Id.* ¶ 29.) Harris typically paid $7.99 per box. (*Id.* ¶ 33.) According to Harris, had she known that the statements about RainBrella on the packaging were false, she never would have purchased RainBrella. (*Id.* ¶¶ 36–37.)

## DISCUSSION

In this lawsuit, Harris asserts several claims related to Rust-Oleum's allegedly false representations, both individually and on behalf of a class of similarly situated individuals. Two of the counts, Count I (seeking declaratory judgment that RainBrella is defective) and Count III (seeking restitution for unjust enrichment), are brought on behalf of a putative nationwide class. The remaining two counts, Count II (seeking damages for violations of Wisconsin's Deceptive Trade Practices Act ("DTPA"), Wis. Stat. § 100.18, and Count IV (seeking damages for a breach of implied warranty of merchantability) are brought on behalf of a Wisconsin class. Rust-Oleum seeks to dismiss the complaint and, in the alternative, to strike all allegations relating to class certification.

    **I.**    **Unjust Enrichment**

        **A.**    **Motion to Dismiss**

First, Rust-Oleum asks this Court to dismiss Harris's claim for unjust enrichment against it pursuant to Federal Rule of Civil Procedure 12(b)(6). "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696

F.3d 635, 637 (7th Cir. 2012). To survive such a motion, "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Unjust enrichment is a common-law theory of recovery "grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." *Kessler v. Samsung Elecs. Am., Inc.*, No. 17-C-0082, 2018 WL 7502913, at *3 (E.D. Wis. Feb. 16, 2018) (quoting *Sands v. Menard*, 904 N.W.2d 789, 798 (Wis. 2017)). Under Wisconsin law,[1] there are three elements of an unjust enrichment claim: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Weaver v. Champion Petfoods USA Inc.*, No. 18-CV-1996-JPS, 2019 WL 2774139, at *6 (E.D. Wis. July 1, 2019) (quoting *Sands*, 904 N.W.2d at 798).

Wisconsin law strictly construes the first element of an unjust enrichment claim, requiring that "[t]he conferral of the benefit must be directly from the plaintiff to the defendant and not, for instance, a third-party retailer." *Id.* Federal district courts applying Wisconsin law have consistently applied this principle to find that a claim for unjust enrichment cannot lie where the plaintiff purchased the allegedly defective product from a third-party seller rather than from the defendant. *See, e.g.*, *Loeb v. Champion Petfoods USA Inc.*, 359 F. Supp. 3d 597, 605 (E.D. Wis. 2019) (holding, at the summary judgment stage, that the plaintiff could not satisfy the

---

[1] Harris concedes that Wisconsin law governs her claim for unjust enrichment.

4

first element of unjust enrichment because it was undisputed that the plaintiff bought the defendants' product in retail stores, not from the defendants directly); *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1055–56 (W.D. Wis. 2018) (dismissing an unjust enrichment claim where the plaintiff purchased the defendant's product from a retailer on the grounds that the defendant did not receive a benefit from the plaintiff); *Emirat AG v. High Point Printing LLC*, 248 F. Supp. 3d 911, 936–37 (E.D. Wis. 2017) (finding that the "fundamental problem" with an unjust enrichment claim by a buyer against a product manufacturer was that the buyer had "conferred no benefit" on the product manufacturer because payment had been directed to a third-party who had only later contracted out production to the product manufacturer).

Therefore, because Harris alleges that she purchased RainBrella from third-party retailers, not from Rust-Oleum, her claim necessarily fails. To avoid this outcome, Harris contends that the focus should be on whether a benefit was conferred, not on the degree of relationship between the plaintiff and the defendant. But, as discussed, courts applying Wisconsin law consistently hold otherwise. Moreover, neither of the cases to which Harris cites stand for the proposition that a claim for unjust enrichment can be sustained even when the relationship between the plaintiff and defendant is indirect—that is, broken up by the intervention of an independent third-party (here, the retailers from which Harris purchased RainBrella). For instance, Harris relies on *Puttkammer v. Minth*, 266 N.W.2d 361, 366 (Wis. 1978), for the proposition that "privity is not necessary for a recovery on a theory of unjust enrichment," but there can be a direct relationship between a plaintiff and defendant without privity of contract.[2] Similarly, Harris points to *Columbia River Technologies I, LLC v.*

---

[2] Indeed, in *Puttkammer*, the plaintiff (a contractor) directly conferred benefits on the defendant (a landowner) in the form of improvements to the defendant's land. *Puttkammer*, 266 N.W.2d at 362.

5

*Blackhawk Group LLC*, No. 19-385, 2019 WL 4850168, at *3 (W.D. Wis. Oct. 1, 2019), as an instance where a court found that it was premature to dismiss an unjust enrichment claim on privity grounds even though the plaintiff was not in a buyer-direct seller relationship with the defendant. But in so doing, the court explicitly distinguished the relationship between the plaintiff and defendant from that of the relationship between a consumer and a manufacturer where the consumer good was purchased at an independent retailer. *Id.* at *3. In fact, the court described the consumer-manufacturer relationship (which is at issue in the present case) as "significantly more remote" than that between the plaintiff and defendant. [3] *Id.* Simply put, under Wisconsin law, no claim for unjust enrichment by a consumer such as Harris can lie against a remote manufacturer such as a Rust-Oleum. [4]

Accordingly, the Court grants Rust-Oleum's motion to dismiss Harris's claims for unjust enrichment in Count III.

### B. Motion to Strike Class Allegations

Beyond seeking to dismiss Harris's individual claim for unjust enrichment, Rust-Oleum also moves to strike the complaint's request for a nationwide class for claims of unjust enrichment. Although the Court recognizes that the disposal of Harris's individual claim necessarily disposes of her class allegation, the Court nonetheless addresses Rust-Oleum's arguments in the event that Harris, or her counsel, seeks to proceed with the class allegations with a replacement named plaintiff.

---

[3] Specifically, *Columbia River* involved a dispute over a $400,000 payment by the plaintiff to the defendant for bitcoin-mining equipment, where the payment was made by the plaintiff to a third party who contracted with the defendant. 2019 WL 4850168 at *1. As the court noted, however, the plaintiff alleged that the third party was acting as an agent of the defendant, not as an independent retailer. *Id.*

[4] Rust-Oleum also contends that Harris cannot state a claim for unjust enrichment because she received something of value and her purchases are governed by the sales contract. But because Harris cannot satisfy the first element of an unjust enrichment claim, the Court need not address these arguments.

Motions to strike class allegations are generally disfavored. *Murdock-Alexander v. Tempsnow Emp.*, No. 16-cv-5182, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016). However, given that Federal Rule of Civil Procedure 23(c)(1)(A) requires a federal district court to rule at "an early practicable time after a person sues or is sued as a class representative . . . whether to certify the action as a class action," courts have recognized that granting a motion to strike in some circumstances can be procedurally proper. Specifically, "in certain circumstances, it will be apparent from the complaint that the class allegations are facially and inherently deficient and therefore class certification is inappropriate." *Huddleston v. Am. Airlines, Inc.*, No. 16-cv-09100, 2018 WL 4742097, at *2 (N.D. Ill. Oct. 2, 2018) (internal quotation marks omitted). It is only where "the dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified [that] a motion to strike the class allegations at the pleading stage is premature." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (internal quotation marks omitted).

Accordingly, courts in this District "have held that a motion to strike class allegations . . . is an appropriate device to determine whether the case will proceed as a class action." *Cholly v. Uptain Grp., Inc.*, No. 15 C 5030, 2017 WL 449176, at *3 (N.D. Ill. Feb. 1, 2017); *see also Jones v. BRG Sports, Inc.*, No. 18 C 7250, 2019 WL 3554374, at *4 (N.D. Ill. Aug. 1, 2019) (concluding that a motion to strike class allegations "must be granted because the complaint demonstrates, on its face, that allowing this case to proceed as a putative class action would be futile"); *Wolfkiel v. Intersections Ins. Servs.*, 303 F.R.D. 287, 293–94 (N.D. Ill. 2014) (granting a motion to strike class allegations where it was clear from the face of the complaint that "individualized inquiries would inevitably predominate over the common questions of fact"). Most often, motions to strike are granted when the defendant shows that the underlying

class claims either require individualized inquiries, there are substantive variations in the governing law, or both. *See, e.g.*, *Jones*, 2019 WL 3554374, at *5–8; *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 832 (N.D. Ill. 2013) (finding that even at the pleading stage, it was clear that predominance could not be met when "the lawsuit present[ed] a slew of legal and factual questions that are unique to each class member").

Unlike other motions to strike, which are evaluated under Rule 12(f), a motion to strike class allegations falls under the purview of Rule 23. *Huddleston*, 2018 WL 4742097 at *2. "As a threshold matter, a proposed class must always meet the Rule 23(a) requirements of numerosity, typicality, commonality, and adequacy of representation." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Once those requirements are met, a potential class must also satisfy at least one of Rule 23(b)'s provisions to be certified. *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Although courts disagree as to which party bears the burden of persuasion regarding class certification when the issue is raised through a motion to strike, *Huddleston*, 2018 WL 474097 at *2, because the Court would reach the same conclusion here regardless of who bears the burden, the Court proceeds as if the burden lies with Rust-Oleum.

Rust-Oleum contends that Harris's proposed class fails to satisfy the predominance requirement for certification under Rule 23(b)(3).[5] Class certification pursuant to Rule 23(b)(3) is only allowed "if the questions of law or fact common to class members 'predominate' over questions that are individual over members of the class"—that is, when common questions which

---

[5] The question of commonality under Rule 23(a) and predominance under Rule 23(b)(3) "overlap in ways that make them difficult to analyze separately." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015). Because Rust-Oleum focuses its arguments on Rule 23(b)(3)'s predominance requirement, the Court will do the same, but it nonetheless notes that much of its analysis demonstrates that Harris's proposed class would also fail to satisfy Rule 23(a)'s commonality requirement.

can be resolved for all class members in a single adjudication represent a significant portion of the case. *Messner*, 669 F.3d at 814–15. To this end, the Seventh Circuit has warned that "[n]o class action is proper unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002).

Yet here, Harris's proposed nationwide class would implicate the unjust enrichment laws of all fifty states. "Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014).[6] Illinois typically follows the Restatement (Second) of Conflict of Laws (1971), which states that the "court applies the law of the forum that has the most significant relationship to the parties and the occurrence," when determining choice-of-law. *Paris v. AMOCO Oil Co.*, 149 F. Supp. 2d 478, 480 (N.D. Ill. 2001) (citing *Chapman & Assocs., Ltd. v. Kitzman*, 739 N.E.2d 1263, 1269 (Ill. 2000)). When applying this test, courts consider where the injury and the conduct causing it occurred, the domicile of the parties, and where the relationship between the parties is centered. *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 914–15 (N.D. Ill. 2013) (citing *Ingersoll v. Klein*, 262 N.E.2d 593, 596 (Ill. 1970)). For the majority of the putative class members, application of this test will likely result in the law of their home state (where they reside, where they likely purchased and used RainBrella, and thus where their alleged injury

---

[6] Harris suggests that there is a possibility that only Illinois law will apply to the proposed class's unjust enrichment claims because "Illinois courts engage in a choice-of-law analysis only if there is a conflict between Illinois law and the law of another state such that a difference in law will make a difference in the outcome." *West Side Salvage, Inc. v. RSUI Indemnity Co.*, 878 F.3d 219, 223 (7th Cir. 2017). (citing *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007)). According to Harris, Rust-Oleum has failed to demonstrate that such an outcome-determinative difference exists. The Court finds otherwise. Not only has Rust-Oleum provided numerous examples of how state law differs in material respects on the question of unjust enrichment, Harris's own briefing relies on Wisconsin law to defend her unjust enrichment claim.

likely occurred) governing their claims. In other words, in a case involving a nationwide class, the law of all fifty states will be implicated.

Further, courts routinely find material conflicts among the fifty states' laws with respect to unjust enrichment claims. *In re McDonald's French Fries Litig.*, 257 F.R.D. 669, 673–74 (N.D. Ill. 2009) (stating that "[n]umerous courts, including the Seventh Circuit" have "[o]verwhelmingly . . . found material conflicts among the fifty states' laws" on unjust enrichment and have accordingly declined class certification); *see also In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) (denying class certification on claims for unjust enrichment, noting that "[a]s other members of this court have pointed out, the law of unjust enrichment varies too much from state to state to be amenable to national or even to multistate class treatment"). And Rust-Oleum does more than rely on general proclamations that unjust enrichment claims are ill-suited for class treatment; it provides examples of how state law differs on whether unjust enrichment can serve as an independent cause of action, the level of fault required to sustain such a claim, the availability of certain kinds of affirmative defenses, and the accrual date for a claim.

In fact, several courts in this District have found class treatment of unjust enrichment claims unsupportable at the pleading stage. For instance, in *Fullerton v. Corelle Brands, LLC*, the court found that it was appropriate to strike class allegations asserting a nationwide class on claims of unjust enrichment because "the variance between state law on these issues means that Plaintiffs' nationwide claims present individual questions of law and fact" that would predominate, meaning that the proposed class did not and could not satisfy Rule 23(b)(3)'s predominance requirement. Nos. 18-cv-4152, 18-cv-4198, 2019 WL 4750039, at *14–15 (N.D. Ill. Sept. 30, 2019). In so ruling, the court noted that it was "appropriate to decide [the question

10

of class certification] at the pleading stage because the difficulty in Plaintiffs' claims stem from the variance in the substantive law, which discovery cannot cure." *Id.* at *15. Similarly, in *Cowen v. Lenny & Larry's, Inc.*, the court granted a motion to strike class allegations for a claim of unjust enrichment because applying unjust enrichment laws "of fifty different states . . . is unmanageable on a class-wide basis because those states' laws conflict in material ways; that is, the essential requirements to establish a claim and the types of relief or remedies available vary significantly. No. 17-cv-1530, 2017 WL 4572201, at *4 (N.D. Ill. Oct. 12, 2017) (internal quotation marks omitted). This Court agrees and concludes that a nationwide class based on Harris's unjust enrichment claim necessarily fails.

Additionally, the Court finds that Harris, the only named plaintiff, is an inadequate class representative. "In order to be an adequate representative, the named plaintiff must be 'part of the class and possess the same interest and suffer the same injury as the class members.'" *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)). As explained above, Harris cannot sustain her own claim for unjust enrichment under the applicable state law and is therefore necessarily outside the proposed class of individuals with unjust enrichment claims against Rust-Oleum. As such, her proposed nationwide class action fails to satisfy the adequacy requirement of Rule 23(a).

The Court therefore grants Rust-Oleum's motion to strike the nationwide class allegations.

### C. Continued Jurisdiction

According to Rust-Oleum, because Harris's nationwide unjust enrichment class does not survive, the remainder of the claims must dismissed for lack of subject-matter jurisdiction. Harris has brought this lawsuit in federal court pursuant to CAFA, which grants federal courts

jurisdiction over class action claims in which the amount in controversy exceeds $5,000,000 and there is minimal diversity. 28 U.S.C. 1332(d)(2). With the dismissal of Harris's nationwide class claims for unjust enrichment, Rust-Oleum asserts that the amount in controversy can be no greater than $40,807 (the amount of RainBrella sales in Wisconsin during the applicable time period). As such, Rust-Oleum argues that the entire action must be dismissed.

But Rust-Oleum's position fails to account for the "traditional rule that jurisdiction is determined at the time of filing." *Drs. Nursing & Rehab. Ctr. v. Sebelius*, 613 F. 3d 672, 677 (7th Cir. 2010). As such, generally "jurisdiction once properly invoked is not lost by developments after a suit is filed." *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010). In the class action context, this means that the decision not to certify a class does not divest a court of jurisdiction under CAFA. *Id.* Although "frivolous attempts to invoke federal jurisdiction fail," the Court does not find the defects in Harris's proposed nationwide class so "obviously fatal" as to make her attempt to maintain a class suit frivolous. *Id.* at 806–07. Thus, because Harris met CAFA's jurisdictional requirements at the time of filing, the Court retains jurisdiction over the remaining claims. *See also Wright Transp., Inc. v. Pilot Corp.*, 841 F.3d 1266, 1272 (11th Cir. 2016) (holding that dismissal of class claims originally brought in federal court under CAFA did not destroy jurisdiction, noting that the defendant "advance[d] no argument that the complaint was frivolous or deficient under CAFA ***at the time it was filed***").Accordingly, the Court now turns to those claims.

**II.     Declaratory Judgment**

Rust-Oleum seeks dismissal of Harris's declaratory judgment claim, which seeks a declaration that RainBrella is "defective" pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act provides that courts "***may*** declare the rights and other

legal relations of any interested party, not that it **must** do so." *Haze v. Kubicek*, 880 F.3d 946, 951 (7th Cir. 2018) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007)). As such, "this statutory language has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 379 (7th Cir. 2019). When the declaration sought by the plaintiff must necessarily be determined to resolve the substantive suit, then the claim "serve[s] no useful purpose" and courts often dismiss the claim. *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) (dismissing a declaratory judgment action in the interest of judicial economy because "the substantive suit would resolve the issues raised by the declaratory judgment action"); *see also Frazier v. U.S. Bank Nat. Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *12 (N.D. Ill. Mar. 29, 2013) ("Plaintiff seeks a declaration on the issues that the Court will decide in addressing Plaintiff's substantive claims. District courts in this District routinely exercise their discretion to decline to hear declaratory judgment action on this basis."). Because Harris must demonstrate that RainBrella is "defective"[7] to prevail on any of her independent claims, the Court dismisses Harris's declaratory judgment action.

Harris, however, contends that the Court must hear this claim pursuant to Rule 23. Essentially, Harris asserts that because Rule 23 authorizes a nationwide class to seek declaratory relief, the Court is compelled to consider the nationwide class claim. But "[i]t is well established that the Declaratory Judgment Act does not create an independent cause of action." *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 774 (N.D. Ill. 2021) (internal quotation marks omitted). Instead, it is procedural in nature—it provides a new form of relief, not the basis for a claim.

---

[7] Harris's complaint states that she seeks a declaration that "RainBrella is defective as set forth herein." (Compl. ¶ 51.) The Court assumes this refers to the allegation that RainBrella does not actually last twice as long as its competitors nor does it last for one hundred washes, as those are the only defects alleged in the remainder of the complaint.

*Garrard v. Rust-Oleum Corp.*, No. 20-cv-00612, 2021 WL 5906063, at *6 (N.D. Ill. Dec. 14, 2021). Therefore, that a class may seek declaratory relief pursuant to Rule 23 does not independently give rise to a cognizable claim. Instead, Rule 23 is just a procedural device that allows for the consolidation and adjudication of a multitude of *existing* claims. *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008) (explaining the primary purposes of the class-action mechanism). Indeed, "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure shall not abridge, enlarge, or modify any substantive right." *Amchem*, 521 U.S. at 613. In other words, the mere fact that a proposed class would be seeking declaratory relief does not, on its own, allow for the creation of a nationwide class on an issue. There must be an underlying claim, which here, there is not. *See Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 488 (2d Cir. 2013) ("The availability of the class action Rule 23 mechanism *presupposes* the existence of a claim.").

In sum, the Court declines to hear Harris's individual claim for declaratory judgment and consequently finds that Harris has no basis by which to seek declaratory relief pursuant to Rule 23(b)(2) for a nationwide class.[8]

### III. Implied Warranty of Merchantability

Rust-Oleum also contends that Harris has failed to plead several required elements of her claim for breach of the implied warranty of merchantability.

---

[8] This holding should not be taken as a finding that Harris could never, in any circumstance, obtain a declaration that RainBrella is defective. *See Garrad*, 2021 WL 5906063, at *6 (dismissing the plaintiff's independent claim for a declaratory judgment as improper but clarifying that the question of whether declaratory relief is appropriate for the remaining class claims is best determined at the class certification stage). Instead, the Court merely finds that a claim for such relief, standing alone and without an underlying cause of action, is improper.

First, Rust-Oleum argues that the claim necessarily fails because there is no privity between Harris and Rust-Oleum. "Wisconsin has always required privity of contract in an action for a breach of implied warranty." *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 801 N.W.2d 781, 816 (Wis. Ct. App. 2011) (quoting *Dippel v. Sciano*, 155 N.W. 2d 55, 57 (Wis. 1967)). For consumer transactions, privity exists only between the buyer and immediate seller—accordingly, there can be no claim for an implied warranty of merchantability between a manufacturer and consumer without a direct sale. *St. Paul Mercury Ins. Co.*, No. 04-C-1124, 2007 WL 129063, at *23 (W.D. Wis. Jan. 12, 2007) (noting that for cases of defective products, the required privity of contract is "usually that between buyer and seller" (internal quotation marks omitted)); *see also Ball v. Sony Elecs., Inc.*, No. 05-C-307-S, 2005 WL 2406145, at *4 (W.D. Wis. Sept. 28, 2005) ("The implied warrant[y] of merchantability . . . , by [its] terms [is] created only between seller and buyer as part of the sales contract . . ..").

Harris does not contest this governing authority, nor does she contend that privity existed between her (and other consumers) and Rust-Oleum.[9] Instead, Harris suggests that an exception to the privity requirement applies where a consumer relies on a manufacturer's written labels or advertisements. But Harris points to no caselaw demonstrating that **Wisconsin** law recognizes such an exception.[10] And while other courts in other jurisdictions have recognized such exceptions to the privity requirement, Wisconsin has declined to do so. *See Lamont v. Winnebago Indus., Inc.*, 569 F. Supp. 2d 806, 815–16 (E.D. Wis. 2008) (explaining that

---

[9] The complaint clearly states that Harris purchased RainBrella from third parties, specifically Amazon and two local retailers. (Compl. ¶ 31.)

[10] The sole case upon which Harris relies, *in re Rust-Oleum Restore Marketing, Sales Practices & Products Liability Litigation*, 155 F. Supp. 3d 772, 826 n.35 (N.D. Ill. 2016), expressly states that Wisconsin law was inapplicable to its analysis.

Wisconsin has not joined other jurisdictions that "have judicially imposed an implied warranty of merchantability on the part of manufacturers that arises independently of any direct sale to, or privity with, the ultimate buyer," and has "instead affirmed the principle that privity of contract must exist between a buyer and seller" for the claim to lie). Additionally, while Harris insists that determining whether privity exists is a fact-intensive inquiry unsuitable for resolution at the pleading stage, that is not the case. Simply put, Wisconsin law applies to Harris's claim for breach of the implied warranty of merchantability, and Wisconsin law requires direct privity such as that between a buyer and a seller. Because Harris does not allege that this existed, her claim must be dismissed.

Additionally, Rust-Oleum contends that Harris fails to provide notice of her claim as required to recover for a breach of implied warranty of merchantability. Wisconsin law requires that a plaintiff "must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Wis. Stat. § 402.607(3)(1). And much like the privity requirement, "Wisconsin law does not appear to recognize any exceptions to the notice requirement." *Blitz*, 317 F. Supp. 3d at 1054 (citing Wisconsin cases). Importantly, "the notice requirement is individualized." *Id.* And here, Harris does not contest that she never provided Rust-Oleum with any notice of her claim.

Harris attempts to evade the pre-suit notice requirement by stating that there was no use for notice because she had already used the products. But Harris seeks damages for the cost of a defective product—in such cases, often the product itself cannot be fixed and the remedy required is simply a refund. *See Brame v. Gen. Motors, Inc.*, 535 F. Supp. 3d 832, 838 (E.D. Wis. 2021) ("The principal reason for requiring notice is to enable the seller to make adjustments or replacements or to suggest opportunities for cure to the end of minimizing the buyer's loss and

16

reducing the seller's own liability to the buyer." (quoting *Paulson v. Olson Implement Co., Inc.*, 319 N.W.2d 855, 862 (Wis. 1982))). There is no support for an exception to the notice requirement whenever a plaintiff has used a product such that it has already been used and consumed.

Additionally, Harris contends that the earlier Lanham Act litigation should have put Rust-Oleum on notice as to her (and other class members') claims, thus obviating her need to provide individualized pre-suit notice. In making this argument, Harris relies on the motivation behind the notice requirement—namely, that a seller be given the opportunity to correct those defects. But Wisconsin law does not take the position that a seller need only be aware of general problems to be on notice—it seeks to give the seller the opportunity to correct the defects of the individual buyer. *See id.* at 838–40 (holding that a prior lawsuit by a separate plaintiff regarding the alleged defect underlying plaintiffs' claims could not serve as pre-suit notice required by law and dismissing plaintiffs' claims for failure to provide notice of their individual claims). Under Wisconsin law, prior lawsuits are too generalized to satisfy a plaintiff's individual requirement of pre-suit notice.

For these reasons, Harris's claim for breach of the implied warranty of merchantability must be dismissed as well.[11]

### IV. Deceptive Trade Practices Act

Finally, Rust-Oleum contends that Harris has not successfully pleaded actual reliance as required for a claim under Wisconsin's Deceptive Trade Practice Act ("DTPA"). To state a claim under the DPTA:

---

[11] Rust-Oleum also contends that Harris's claim must be dismissed because RainBrella is merchantable. Because the Court finds two independent reasons why Harris's claim cannot survive, it declines to address the merits of this argument.

17

> a plaintiff must allege that the defendant (1) "with the specified intent, made an advertisement, announcement, statement or representation . . . to the public, (2) which contains an assertion, representation or statement of fact that is untrue, deceptive or misleading, and (3) that the plaintiff has sustained a pecuniary loss as a result of the assertion, representation, or statement of fact

*Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 775 F. Supp. 2d 1082, 1086–87 (E.D. Wis. 2011) (quoting *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004)).

Specifically, Rust-Oleum asserts that Harris has failed to plead adequately the third element of a DPTA claim both because her complaint contains no allegation that she actually read and relied upon the allegedly false statements and because she purchased RainBrella numerous times over several years. The Court, however, finds that Harris has alleged enough for her claim to survive. Although her complaint is somewhat perfunctory, particularly with regards to reliance upon the allegedly false statements, it nonetheless provides enough facts to put Rust-Oleum on notice as to the nature of her claims. Harris alleges that RainBrella prominently displayed statements on its packages, packages Harris then purchased, that those statements were false, and that, had she known they were not true, she would not have purchased the product. Drawing all inferences in Harris's favor, it is clear that she is alleging that Rust-Oleum's representations about RainBrella's quality factored into her purchasing decision, thus satisfying the third requirement of a claim under the DPTA.

Nor does the fact that Harris admittedly purchased RainBrella numerous times over three years automatically dispose of her claim. While Rust-Oleum makes much of how this consumption pattern supposedly demonstrates that Harris was satisfied with the product, that Harris apparently believed RainBrella worked well enough to keep purchasing is not dispositive of the question at issue here, at least with regards to the claim that it "Lasts 2X Longer" than the

leading competitor. Harris may have been satisfied enough with RainBrella not to seek out a competing product, but she also may have done so with the belief that RainBrella did indeed, as it stated, "Last 2X Longer" than any other option. Because Harris could have relied upon Rust-Oleum's representations even while completing repeat purchases, dismissal at this point would be premature. Accordingly, Rust-Oleum's motion to dismiss the DPTA claim is denied.

## CONCLUSION

For the reasons discussed above, the Court grants Rust-Oleum's motion to dismiss (Dkt. No. 20) as to Counts I, III, and IV, denies the motion as to Count II, and strikes the nationwide class allegations with respect to unjust enrichment.

Dated: March 30, 2022

ENTERED:

_____
Andrea R. Wood
United States District Judge